IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:19-00126 (WOB-CJS)

JOHN DOE, ET AL.  PLAINTIFFS

VS.          <u>MEMORANDUM OPINION AND ORDER</u>

KATHY GRIFFIN  DEFENDANT

This case is one of numerous lawsuits filed in the wake of a widely publicized encounter between a group of students from Covington Catholic High School ("CCH") and Native American Nathan Phillips near the Lincoln Memorial in Washington, D.C. on January 19, 2019.

Plaintiffs are four CCH students who were present at that event. They filed this lawsuit against defendant Kathy Griffin, a comedian who posted about the students on Twitter after the incident. Plaintiffs allege: (1) Harassment under KRS 525.070; (2) Harassing Communications under KRS 525.080; (3) Threatening under KRS 525.080; and (4) Menacing under KRS 525.050.

Defendant has filed a motion to dismiss, arguing, among other things, that the Court lacks personal jurisdiction over her for plaintiffs' claims. (Doc. 9). The matter is fully briefed, and the Court previously heard oral argument from the parties.

*Introduction*

Before the Court issues its opinion, it will make a few observations.

In our jurisprudence, the courts of a State can subject to their jurisdiction only persons who can be served with process in the state, with certain exceptions. Each state also has a statute that establishes criteria for valid service of such persons. These laws are commonly referred to as "long-arm" statutes.

Under Kentucky law, a plaintiff desiring to sue an out-of-state defendant must comply with Kentucky's long-arm statute, as well as the principles of due process.

As will be discussed in detail below, plaintiffs do not claim that defendant engages in regular activity in Kentucky or derives substantial revenue from Kentucky. Rather, they allege that the alleged tortious acts set forth in the complaint were committed in Kentucky.

The problem with this is that defendant resides in California and posts comments on her Twitter page from there and, presumably, from other places. Plaintiffs do not allege, however, that defendant created the posts about them while in Kentucky.

With these principles in mind, the Court now issues the following Memorandum Opinion and Order.

### *Factual Background*

On January 18, 2019, plaintiffs assembled near the Lincoln Memorial after participating in the annual March for Life. (Compl.¶ 5). Plaintiffs and other CCH students had an encounter with Native-American elder Nathan Phillips, images of which were widely disseminated through news broadcasts, publications, and social media postings. (*Id.* ¶¶5-6). This publicity "incited a hoard of reactive commentary, often consisting of vile, hateful, and noxious narrative and opinion." (*Id.* ¶ 7.)

On January 20, 2019, defendant, who resides in California, posted the following on her Twitter account:

> Ps. The reply from the school was pathetic and impotent. Name these kids. I want NAMES. Shame them. If you think these fuckers wouldn't dox you in a heartbeat, think again.

(Doc. 1-1).

This tweet was a comment on another of defendant's posts, which included photos of the incident and a link to a news story about it. Twenty minutes later, defendant tweeted:

> Names please. And stories from people who can identify them and vouch for their identity. Thank you.

(Doc. 1-2).

A few hours later, defendant tweeted:

> Maybe you should let this fine Catholic school know how you feel about their students [*sic*] behavior toward the Vietnam veteran, Native American #NathanPhillips.

(Doc. 1-3).

3

The next day, another Twitter user posted a photo of CCH student Nicholas Sandmann next to a photo of Supreme Court Justice Brett Kavanaugh, stating that they demonstrated the "look of white patriarchy." Defendant commented:

> Oooh gurrrl, you've triggered lots of verrry threatened bros. Yummy. It's delicious.

(Doc. 1-4).

Plaintiffs allege that defendant's tweets constituted a "doxing" campaign targeted to "call to action" people in the Commonwealth of Kentucky to harass and threaten plaintiffs. (Compl. ¶¶ 15-19). They further allege that by this conduct, defendant "caused tortious injury by acts or omissions in the Commonwealth of Kentucky" and "purposely availed herself of the privilege of acting" to cause harm in Kentucky. (*Id.* ¶¶19-20).

Defendant moves to dismiss for lack of personal jurisdiction, failure to state a claim, and on First Amendment grounds. (Doc. 9-1).

*Analysis*

**A. <u>Waiver</u>**

Plaintiffs first argue that defendant has waived her personal jurisdiction defense. (Doc. 14 at 15-16). Plaintiff bases this argument on the fact that defendant's counsel filed a Notice of Appearance on October 22, 2019, but did not file her motion to dismiss until November 8, 2019.

4

Plaintiff's argument is not well taken. The Sixth Circuit has held that there is no "bright line rule" as to what conduct will serve as "constructive consent to personal jurisdiction." *Boulger v. Woods*, 917 F.3d 471, 477 (6th Cir. 2019). Instead, a court must ask whether the defendant's conduct "has given the plaintiff a 'reasonable expectation' that the defendant will defend the suit on the merits or whether the defendant has caused the court to 'go to some effort that would be wasted if personal jurisdiction is later found lacking." *Id.* (quoting *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012)).

Indeed, in *King*, the Sixth Circuit held that the filing of a general appearance one month prior to moving for dismissal for lack of service of process did not constitute forfeiture of that defense. *King*, 694 F.3d at 660 n.7.

Here, at the time defendant's counsel filed his notice of appearance, defendant had filed no responsive pleading omitting the personal jurisdiction defense and had not participated in any other way that would lead plaintiffs to conclude that defendant would not assert the defense. *See* 6 James Wm. Moore et al., *Moore's Federal Practice* § 12.31[3] ("A defendant must object to the

5

court's exercise of personal jurisdiction in the first Rule 12 motion or in the responsive pleading.").[1]

And, the two-week window between the notice of appearance and the motion to dismiss did not cause the Court to engage in any efforts that would be wasted if such defense proved successful. *Cf. Horn v. City of Covington*, Civil Action No. 14-73-DLB-CJS, 2019 WL 2344773, at *4 (E.D. Ky. June 3, 2019) (finding that defendant forfeited his right to challenge service of process through extensive participation in litigation; defendant waited until after summary judgment stage to pursue defense).

The Court therefore concludes that defendant has not waived her personal jurisdiction defense.

B. **Personal Jurisdiction**

When a federal court sits in diversity, it may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so. *My Retirement Account Servs. v. Alternative IRA Servs., LLC*, Civil Action No. 5:19-CV-122, 2019 WL 5298718, at *3 (W.D. Ky. Oct. 17, 2019) (citation omitted).

The proper analysis of long-arm jurisdiction over a nonresident defendant under Kentucky's long-arm statute, Kentucky Revised Statute § 454.210, consists of a two-step process. *Caesars*

---

[1] And, of course, the Federal Rules of Civil Procedure abolished the technical distinction between general and special appearances. *Id.* [2].

6

*Riverboat Casino, LLC v.* Beach, 336 S.W.3d 51, 57 (Ky. 2011). The court must first determine whether the cause of action arises from the type of conduct or activity that is enumerated in one of the nine sections of KRS 454.210. *Id.* If the defendant's alleged conduct does not fall within any category listed in the statute, she is not subject to personal jurisdiction in Kentucky. *Id.* If the conduct is within an enumerated category, the court then must assess whether "exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id.*

**1. Kentucky Long-Arm Statute**

Plaintiffs' memorandum in opposition to defendant's motion to dismiss ignores the clear directive of *Caesars Riverboat* that plaintiffs must first show that defendant's conduct falls within the long-arm statute. (Doc. 14). Instead, plaintiffs proceed directly to a due process analysis, relying largely on case law that predates *Caesars Riverboat* and/or cases that have been affected by Supreme Court authority, as will be discussed below.

At oral argument, however, plaintiffs informed the Court that they are relying solely on KRS 454.210(2)(a)(3), which provides for personal jurisdiction over a defendant who causes "tortious injury by an act or omission in this Commonwealth," where the claim arises out of such act or omission. Plaintiffs posit that defendant's tweets were "acts" committed in Kentucky because they called for third parties there to take actions against plaintiffs

7

and thus caused them "tortious and harmful consequences" in this forum. (Compl. ¶¶ 16-20).

Kentucky law, however, is to the contrary. "Kentucky courts routinely find that a defendant must be present in the Commonwealth when he starts an action that causes a tort in order for section 454.210(2)(a)(3) to apply." *Crum v. Estate of Mayberry*, Civil No. 14-84-ART, 2014 WL 7012122, at *5 (E.D. Ky. Dec. 11, 2014).

In *Crum*, the court found that it did not have personal jurisdiction over a defendant who plaintiff alleged stole money from his bank account. The defendant resided in Michigan and, while his acts caused plaintiff harm in Kentucky, the unlawful withdrawals occurred in Michigan. *Id.* The Court cited *Pierce v. Serafin*, 787 S.W.2d 705 (Ky. Ct. App. 1990), in which the Kentucky Court of Appeals "found that a defendant did not commit an act in the Commonwealth when he sent a letter from outside the state that contained statements that caused injury in Kentucky." *Id.*

The *Pierce* court drew the distinction between tortious *actions* and tortious *consequences*, and it held that it is the former that must occur within the Commonwealth to satisfy KRS 454.210(2)(a)(3). *Pierce*, 787 S.W.2d at 706.

This reasoning is routinely employed by federal courts applying the Kentucky long-arm statute. *See Management Registry, Inc. v. Cloud Consulting Partners, Inc.*, Civil Action No. 3:19-CV-00340, at *4 (W.D. Ky. Sept. 18, 2019) ("Since the Kentucky

8

Supreme Court's decision in *Caesars Riverboat Casino, LLC v. Beach*, several cases have rejected the argument that an out-of-state defendant commits an 'act or omission in this Commonwealth' by sending a tortious communication into Kentucky."); *My Retirement Account Servs. v. Alternative IRA Servs., LLC*, Civil Action No. 5:19-CV-122, 2019 WL 5298718, at *4 (W.D. Ky. Oct. 17, 2019) (finding no personal jurisdiction under KRS 454.210(a)(3) where plaintiffs alleged that the actions of California defendants were directed at, and caused harm in, Kentucky); *Perkins v. Bennett*, Civil Action No. 3:13-CV-695, 2013 WL 6002761, at *6-7 (W.D. Ky. Nov. 12, 2013) (holding that out-of-state defendant did not commit an act within Kentucky where the alleged tortious acts of fraud and misrepresentation were committed via telephone and email from South Carolina); *Barker v. Collins*, Civil Action No. 3:12-CV-372-S, 2013 WL 3790904, at *5 (W.D. Ky. July 19, 2013) (finding that plaintiffs' claims of "extortion by telephone" were not "acts" in Kentucky that could trigger section 2(a)(3)).

As the court noted in *Barker*, subsection (a)(4) of the Kentucky long-arm statute ("causing a tortious injury in this Commonwealth by an act or omission outside this Commonwealth") "would be completely obviated" if plaintiffs' theory were accepted, since "every set of facts which gave rise to tortious injury could be brought within the terms of paragraph three (3)." *Barker*, 2013 WL 3790904, at *5.

9

In addition, the following observation by the Court in *Crum* is equally applicable here:

> The plain language of section 454.210(2)(a)(3) makes it difficult to bring cases against identity thieves or hackers who operate remotely to injure Kentucky residents. But the Kentucky legislature made its choice when it drafted the statute. The Court must respect that choice. The legislature can always expand the reach of the long-arm statute to catch additional torts, like those involving internet banking. The legislature has done so in the past; after all, the last prong of the long-arm statute specifically mentions torts committed using a "telephone solicitation" as grounds for exercising jurisdiction over a foreign defendant. *See* Ky. Rev. Stat. § 454.210(2)(a)(9). In the meantime, the Court has no basis to exert jurisdiction over [defendant] as [plaintiff] does not claim that he committed a harmful act in Kentucky.

*Crum*, 2014 WL 7012122, at *5.

So too here. Should the legislature wish to broaden the long-arm statute to reach claims such as those asserted by plaintiffs, it may do so. But this Court may not.

Finally, during oral argument and in a post-hearing supplemental brief, plaintiffs raised a new theory: that defendant's tweets trigger personal jurisdiction under KRS 454.210(2)(a)(3) because they were "true threats." (Doc. 35). This too is unavailing.

Plaintiffs cite *United States v. Jeffries*, 692 F.3d 473 (6th Cir. 2012), for the proposition that a court may "properly adjudicate" a case involving a "true threat" in the forum where the target of the threat received it. This is very misleading.

First, *Jeffries* is a criminal case in which the defendant was convicted under a statute making it a federal crime to transmit in interstate commerce any communication containing a threat to injure another person. *Jeffries*, 692 F.3d at 477 (citing 18 U.S.C. § 875(c)). Second, the defendant's challenge to venue being placed where the threat was received was unsuccessful because a criminal venue statute specifically provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, *may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.*" 18 U.S.C. § 3237(a) (emphasis added).

*Jeffries* thus has nothing to do with personal jurisdiction or the Kentucky long-arm statute.

Similarly, *Bell v. Jefferson*, Civil Action No. 5:18-CV-032-CHB, 2019 WL 4017241 (E.D. Ky. Aug. 26, 2019), does not support plaintiffs' position. The Court there held that the defendant was subject to jurisdiction under section (a)(3) of the long-arm statute because, through an agent, she acted in Kentucky to transfer certain funds, and those transfers gave rise to plaintiff's claims for conversion and breach of fiduciary duty. *Id.* at *6.

Here, there is no allegation that defendant committed any act through an agent in Kentucky which gives rise to plaintiffs' causes of action.

The Court thus concludes that plaintiffs have not shown that defendant is subject to personal jurisdiction under the Kentucky long-arm statute for their claims against her.[2]

### 2. Due Process

While the Court need not reach the question of due process given that plaintiffs cannot satisfy the first requirement of *Caesars Showboat*, the Court will make a few observations in the interest of thoroughness and possible appellate review.

As noted above, plaintiffs rely largely on a due process analysis found in cases such as this Court's decision in *Jones v. Dirty World Entertainment Recordings, LLC*, 766 F. Supp.2d 828 (E.D. Ky. 2011), and the Supreme Court's "effects test" from *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), and *Calder v. Jones*, 465 U.S. 783 (1984).

*Jones*, of course, preceded *Caesars Riverboat* by two months and thus has no bearing on the long-arm statute issue. And, as to due process, this Court relied heavily on *Keeton* and *Calder*. The proper application of those cases, however, has more recently been addressed by the Supreme Court.

In *Walden v. Fiore*, 571 U.S. 277 (2014), the Court considered the "minimum contacts" necessary to create specific jurisdiction

---

[2] Having so concluded, the Court need not reach defendant's Rule 12(b)(6) and First Amendment arguments.

12

that satisfies due process, and it specifically rejected the application of the "effects test" that plaintiffs here advocate.

The Court first reviewed several basic principles. "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Second, the minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. Thus, the plaintiff cannot be the only link between the defendant and the forum." *Id.*

And, due process "requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (citation omitted).

The Court then turned to the facts of the case before it and concluded that the defendant in question--a DEA agent who seized money from plaintiffs at the airport in Atlanta—could not be subject to personal jurisdiction in Nevada, where plaintiffs lived. *Id.* at 288. The Court found that the appellate court erred in reasoning that defendant's knowledge of the plaintiffs' strong connections to Nevada, coupled with the foreseeability that they

13

would suffer harm there, satisfied the "minimum contacts" inquiry. *Id.* at 289.

The Court stated:

> This approach to the "minimum contacts" analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis. . . . It also obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself.
>
> **Relying on *Calder*, respondents emphasize that they suffered the "injury" caused by petitioner's allegedly tortious conduct (*i.e.*, the delayed return of their gambling funds) while they were residing in the forum. . . . This emphasis is likewise misplaced. As previously noted, *Calder* makes clear that mere injury to a forum resident is not a sufficient connection to the forum.** Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. **The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.**

*Id.* at 289-90 (emphasis added).

*Walden* thus makes it clear that even if plaintiffs could satisfy the long-arm statute, they could not show that an exercise of personal jurisdiction over defendant would comport with due process. It is a mere fortuity that plaintiffs are residents of Kentucky as it relates to their claims; defendant "never traveled to, conducted activities within, contacted anyone in, or sent

14

anything or anyone to" Kentucky. *Id.* at 289. Plaintiffs are defendant's only connection to Kentucky for purposes of their claims, and *Walden* makes clear that that is insufficient to allow her to be sued here.

In sum, even assuming the postings alleged in the complaint are tortious, this Court holds that they do not constitute acts committed in Kentucky. Further, allowing defendant to be sued for such postings in Kentucky would also violate basic fairness or due process. Therefore, the present action must be dismissed.

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that defendant's motion to dismiss (Doc. 9) be, and is hereby, **GRANTED**.

This 9th day of April 2020.



Signed By:
*William O. Bertelsman* WOB
United States District Judge